IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JULIAN JAMES, *et al.*, | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3576 |
| | § | |
| HARRIS COUNTY SHERIFF'S | § | |
| DEPARTMENT, *et al.*, | § | |
|    Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court in this civil rights case are a Motion to Quash [Doc. #132] and a Supplemental Emergency Motion to Quash [Doc. #133] (collectively, "Motions to Quash") filed by Defendant William Wilkinson ("Wilkinson") seeking to quash Plaintiffs' Subpoena ("Subpoena")[1] served on James W. Dickie, Jr. Dickie is a social worker who counseled Wilkinson after two shootings in which Wilkinson was involved in May 2004. The Motions to Quash have been fully briefed and are ripe for decision.[2] The Court conducted an evidentiary hearing on February 16, 2006, on the issue of whether Wilkinson had a reasonable expectation of privacy about the contents of what he discussed in the counseling sessions.

---

[1]     The Subpoena is attached as Exhibit A to the Motion to Quash.

[2]     The parties have submitted the following: Plaintiffs' Response [Doc. # 135], Wilkinson's Reply [Doc. # 137], Plaintiffs' Surresponse [Doc. # 141], and Wilkinson's Surreply [Doc. # 142].

The Court has now considered the parties' written submissions, the live witnesses' testimony, all matters of record, and the applicable legal authorities. The Court concludes the Motions to Quash should be **granted.**

I.    BACKGROUND

In May 2004, Wilkinson was working as a Deputy Sheriff for the Harris County Sheriff's Department ("HCSD"). While on duty on May 7, 2004, Wilkinson shot Robert Barkley in the parking lot of a Dillard's store. The shooting was not fatal.

On May 14, 2004, Wilkinson stopped a vehicle driven by Hiji Harrison ("Harrison"). The sequence of events is hotly contested, but the parties agree that Wilkinson shot and killed Harrison. Plaintiffs, Harrison's mother, wife, and minor child, brought this lawsuit against Wilkinson and the HCSD pursuant to 42 U.S.C. §§ 1983, 1988, alleging violations of Harrison's rights under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution.[3]

On May 10, 2004, the HCSD placed Wilkinson on temporary Administrative Duty status,[4] as required by HCSD policy when an officer is involved in a shooting.[5] Assignment to Administrative Duty status is non-disciplinary and involves no loss of pay. The

---

[3]  Plaintiffs also vaguely asserted unspecified wrongful death claims pursuant to "§ 71.001 *et seq.*" of the Texas Civil Practice and Remedies Code. Those claims have been dismissed because they were either futile or not adequately pleaded.

[4]  Memorandum from Captain Michael O'Brien dated May 10, 2004 ("Assignment Memorandum"), Hearing Exhibit 5.

[5]  Section F of HCSD Manual ("HCSD's Administrative Duty Policy"), Exhibit B to Plaintiffs' Response.

assignment is designed to "address the personal and emotional needs" of the officer involved in a shooting and to "assure the community that the facts surrounding the case are fully and professionally developed."[6] The HCSD's Administrative Duty Policy required Wilkinson to attend a post-incident debriefing and counseling session with an HCSD-approved counselor before returning to full-duty status.[7] Through its employee assistance program ("EAP"), the HCSD referred Wilkinson to James W. Dickie, Jr., is a licensed social worker.

Before attending counseling, the HCSD required Wilkinson to execute a form authorizing Dickie to release certain related records to the HCSD through Captain Mark Wrobleski ("Authorization"),[8] a superior officer in the HCSD's human resources department. The Authorization form contains nine categories or options for information that Wilkinson could permit to be disclosed.[9] It is unclear who physically prepared the form and typed Wilkinson's initials next to certain options, but Captain Wrobleski explained the form, as completed, contained the typical release language and options used by the HCSD. The form stated, "as to information to be released," "Other (Specify: ALL RECORDS PERTAINING

---

[6]  Assignment Memorandum; *see also* HCSD's Administrative Duty Policy.

[7]  *See* Assignment Memorandum; *see also* HCSD's Administrative Duty Policy.

[8]  Authorization for Release of Records or Information, signed May 17, 2004, Hearing Exhibit 1. Wilkinson also executed an identical authorization on May 10, 2004. Authorization dated May 10, 2004, Exhibit G to Wilkinson's Reply, at Bates 004.

[9]  The Authorization's categories are: "Entire Record"; "Diagnosis / Assessment'" "Treatment Plan"; "Treatment Provider to whom I am referred"; "Progress reports on my treatment"; "Substance Abuse Evaluation"; "Treatment Recommendation"; "Expected length of treatment"; and "Other."

TO THE REFERRAL AND ATTENDANCE)" and, as to "the purpose for the disclosure," "POST-SHOOTING EVALUATION AND COUNSELING."[10]  Wilkinson signed the form as presented to him.  In so doing, he did not initial or agree by signing the form to disclosure to the HCSD of different information such as "Entire file," "Diagnosis," "Progress reports on my treatment," or "Treatment Plan."[11]

Captain Wrobleski testified that he understood the form as Wilkinson completed it would permit him (Captain Wrobleski) to look at whatever documents the therapist/social worker sent, but that he never had received more than a simple letter stating the dates when officers attended sessions with the therapist and stating the need for another appointment or that the officer was fit to return to work.  He added that he never received a therapist's progress notes on any officer or any detail about what was discussed at the counseling sessions.  Captain Wrobleski believes that this is because those matters are treated as confidential.  While officers in the HCSD often know that an officer involved in a shooting incident will attend some counseling (because this is required by HCSD policy), the details of the counseling sessions are not known to anyone who does not have a professional reason to know.  Furthermore, the number of visits and dates of the visits are not public. The therapists' reports are kept in the officers' medical files.

---

[10]  Other purposes are to "provide continuity of care," to "permit processing of benefit claim," or to "enable my employer to make a determination of my employment status."  *See* Authorization.

[11]  *See id.*

At Dickie's office, prior to the first session, Wilkinson filled out forms that Dickie provided. One was an authorization form to disclose certain information.[12] Wilkinson testified that Dickie told him that the sessions would be confidential. Dickie's testimony confirms Wilkinson's understanding. Dickie testified that he told Wilkinson that their conversations during the therapy sessions would remain private. In the section of Dickie's Authorization form, which was entitled "Protected Health Information To Be Used or Disclosed," Wilkinson initialed the following boxes that Dickie had marked as to the scope of disclosure: "Current status (compliant or non-compliant)," "Expected Length of Treatment," "Progress Report on my Treatment," and "Treatment Recommendations." Dickie testified that selection of these categories is standard. All he ever discloses pursuant to this type of authorization is whether the patient/employee has attended the sessions, whether more sessions are needed, and whether the officer is able to resume work. Dickie explained that his reports to the HCSD are very short and general, like the ones he sent on Wilkerson.[13] Dickie does not ever feel at liberty to describe to the HCSD the reasons why a patient needs more treatment.[14]

---

[12]   Authorization to Use or Disclose Protected Health Information, Hearing Exhibit 9.

[13]   Handwritten Letter from Dickie to Wrobleski dated May 20, 2004, Hearing Exhibit 3; Handwritten Letter from Dickie to Wrobleski dated May 27, 2004, Hearing Exhibit 4.

[14]   The Authorization to Use or Disclose Protected Health Information expires six months after the form is completed. *See id.*

Wilkinson attended two counseling sessions with Dickie relating to the May 15 shooting.[15] These sessions occurred on May 20 and May 27, 2004. After the first session, Dickie sent Captain Wrobleski a handwritten note containing two sentences. The note states only that Dickie saw Wilkinson for a counseling session through the EAP and that he was scheduled to see Wilkinson for another session the next week.[16] After the second session, Dickie sent another two-sentence, handwritten note to Captain Wrobleski in which he conveyed only that Wilkinson attended the counseling session through the EAP and that Dickie "believe[d] Deputy Wilkinson has handled the situation well and does not need further counseling at this time."[17]

## II. DISCUSSION

Plaintiffs' Subpoena demands, in part, inspection and copying of Dickie's treatment and counseling records concerning Wilkinson and a deposition of Dickie about the counseling sessions. In the Motions to Quash, Wilkinson contends the records and deposition testimony sought in the Subpoena are privileged under the psychotherapist-patient privilege. Plaintiffs respond that when a law enforcement officer such as Wilkinson is required to submit to a psychological evaluation as part of his employment and the officer

---

[15] Wilkinson also participated in a session with Dickie on May 11, 2004, relating to the May 7 shooting incident. *See* Handwritten Letter from Dickie to Wrobleski dated May 11, 2004, Hearing Exhibit 8. On May 11, 2004, Dickie sent a letter to Captain Wrobleski stating that Wilkinson's "emotional responses seem to be within normal parameters, and I believe that he is ready to return to his usual duties." *Id*.

[16] Handwritten Letter from Dickie to Wrobleski dated May 20, 2004, Hearing Exhibit 3.

[17] Handwritten Letter from Dickie to Wrobleski dated May 27, 2004, Hearing Exhibit 4.

permits disclosure of the assessment, there is no expectation of confidentiality and the psychotherapist-patient privilege does not apply to preclude discovery about the evaluation or counseling sessions.

After a careful consideration of the record and applicable law, the Court holds that Wilkinson has met his burden to prove he had an expectation of privacy with respect to Dickie's therapy progress notes, other undisclosed documents relating to his therapy, and any communications made in the therapy sessions with Dickie.[18] The Court therefore holds that Wilkinson met his burden to prove that a psychotherapist-patient privilege existed. The Court also holds that Wilkinson established that he did not authorize disclosure of Dickie's treatment or counseling records, progress notes, or other records not already sent to Captain Wrobleski or the EAP for billing purposes. Thus, there is no evidence Wilkinson waived his psychotherapist-patient privilege. The Motions to Quash will be granted.

### A.   <u>Legal Standards</u>

The party asserting a privilege has the burden to demonstrate that the privilege exists under the circumstances presented. *See In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001) ("A party asserting a privilege . . . bears the burden of demonstrating its applicability."); *Speaker v. County of San Bernardino*, 82 F. Supp. 2d 1105, 1108 (C.D. Cal. 2000) ("[T]he burden of proof for the psychotherapist/patient privilege is on the party seeking to establish that the privilege applies."). Courts typically hold that waiver is a

---

[18]   This does not include Wilkinson's authorization forms, Dickie's billing records, and Dickie's letters sent to Captain Wrobleski.

negative burden that the privilege proponent must satisfy. *See Merrill v. Waffle House*, 227 F.R.D. 467, 475 (N.D. Tex. 2005) ("Plaintiff has the burden of demonstrating that there has been no waiver of the [psychotherapist-patient] privilege." (citing *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Ca. 2003))); *United States v. Miller*, 660 F.2d 563, 570–71 (5th Cir. 1981) (holding that proponent of attorney-client privilege did not meet burden of proving that accountant's disclosure of documents to revenue agent did not constitute waiver), *vacated on other grounds,* 685 F.2d 123 (5th Cir. 1982); *see also United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978) (holding privilege proponent has burden of proof on establishing the essential elements of the attorney-client privilege; the elements include showing that the client did not waive the privilege); *Ferko v. National Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133–34 (E.D. Tex. 2003) (same).[19] The Court applies these burdens to the case at hand—Wilkinson must establish both the existence of the privilege and the absence of waiver.

---

[19] *See also United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996) ("[T]he party claiming the privilege carries the burden of demonstrating that . . . the privilege was not waived."); *Weil v. Inv./Indicators, Research and Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) ("One of the elements that the asserting party must prove is that it has not waived the privilege."); *United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) (finding that the client "made no showing that the lawyer's disclosures were without his consent" and therefore failed to establish the privilege); *but see Perkins v. Gregg County*, 891 F. Supp. 361, 363 (E.D. Tex. 1995) (In the context of waiver, noting "[o]nce the [attorney-client] privilege has been established, the burden shifts to the other party to prove any applicable exceptions."); *BG Real Estate Svcs. v. Am. Equity Ins. Co.*, 2005 WL 1309048, at *5 (E.D. La. Dec. 8, 2005) ("Only after the party resisting discovery has borne its evidentiary burden of establishing [the attorney-client] privilege does the burden shift back to the party seeking discovery to . . . prov[e] waiver.").

The seminal case governing the application of the psychotherapist-patient privilege in federal court is *Jaffee v. Redmond*, 518 U.S. 1 (1996). In that case, the Supreme Court recognized a federal common law privilege that protects psychotherapist-patient communications. *Id.* at 10. In *Jaffee,* police officer Mary Lou Redmond shot and killed a suspect in the line of duty. *Id.* at 4. The suspect's family filed suit in federal district court against Redmond and her employer, the Village of Hoffman Estates, Illinois. The plaintiffs alleged that Redmond violated the suspect's constitutional rights by using excessive force. *Id.* at 5. During discovery, the plaintiffs learned Redmond attended counseling sessions after the shooting with a licensed social worker employed by the Village. *Id.* Redmond attended approximately fifty counseling sessions with the social worker. The plaintiffs sought access to the social worker's notes from the sessions for use at trial. Redmond resisted discovery, contending the notes were protected from involuntary disclosure under a psychotherapist-patient privilege. *Id.*

The Supreme Court held that the session notes were protected from discovery under a psychotherapist-patient privilege under Federal Rule of Evidence 501. *Id.* at 10. The Court explained: "protecting confidential communications between a psychotherapist and her patient outweigh[s] the need for probative evidence" because "effective psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories and fears." *Id.* at 9–10. The Court, noting that improved mental health of citizens is an important public good, stressed that a psychotherapist-patient privilege "serves the public interest by facilitating the provision

of appropriate mental treatment for individuals suffering from the effects of a mental or emotional problem." *Id.* at 11. In cases such as *Jaffee* the privilege serves a particularly strong public interest: "The entire community may suffer if police officers are not able to receive effective counseling and treatment after traumatic incidents, either because trained officers leave the profession prematurely or because those in need of treatment remain on the job." *Id.* Finally, the Supreme Court predicted that only a modest evidentiary benefit would materialize if it rejected the privilege because, without a privilege, conversations between the therapists and their patients would be "chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation." *Id.* at 11–12.

The *Jaffee* Court also extended the privilege to protect "confidential communications made to licensed social workers in the course of psychotherapy." *Id.* at 15. Finally, the Court stated that a patient can waive the privilege, but declined to define the "full contours" of the privilege and under what circumstances it could be waived. *Id.* at 15 n.14, 18.

**B.    Analysis**

The Court turns to the threshold issue *sub judice*—namely, whether the psychotherapist-patient precludes the discovery sought in the Subpoena regarding Wilkinson's post-shooting counseling. The Fifth Circuit has not addressed the psychotherapist-patient privilege or waiver of any such privilege in any civil case. The parties have not cited of any controlling authority addressing the psychotherapist-patient privilege under materially similar facts.

Plaintiffs rely on four federal district court opinions from other courts in circuits other than the Fifth Circuit: *Kamper v. Gray*, 182 F.R.D. 597 (E.D. Mo. 1998); *Scott v. Edinburg*, 101 F. Supp. 2d 1017 (N.D. Ill. 2000); *Phelps v. Coy*, 194 F.R.D. 606 (S.D. Ohio 2000); *Barrett v. Vojtas*, 182 F.R.D. 177 (W.D. Pa. 1998). These opinions are factually distinguishable from present circumstances and support the existence of Wilkinson's claim of privilege in this case.

Plaintiffs argue that *Kamper*, *Scott*, *Phelps*, and *Barrett* each rejected the application of the psychotherapist-patient privilege where a police officer involved in a shooting is required to submit to psychotherapy and/or a psychological evaluation by his employer. Plaintiffs contend these cases are distinguishable from *Jaffee* because in *Jaffee* the officer voluntarily attended the counseling sessions.[20] Plaintiffs' reliance on these cases is unavailing.

In *Kamper*, it appears that the officer knew that a substantial report containing the results of his mandatory post-shooting evaluation would be submitted to his employer. Furthermore, the evaluation was placed in the officer's employment file. *See* 182 F.R.D. at 598–99. The court rejected the existence of any privilege because the officer "was aware that his evaluations would be reported to his employer, [and thus the officer] had no reasonable expectation of confidentiality regarding his communications. . . ." *Id.* at 599.

---

[20] The Seventh Circuit's opinion suggests that the counseling *was* voluntary, *see Jaffee v. Redmond*, 51 F.3d 1346, 1350 (7th Cir. 1996) (stating "Redmond sought counseling" with a licensed social worker after the shooting), although Wilkinson correctly notes that Supreme Court's opinion in *Jaffee* does not mention voluntariness of the counseling as a factor in determining whether the privilege applies.

The court reasoned that no privilege was ever created because the officer had no reasonable expectation of confidentiality. Accordingly, the reports, notes, and documents relating to the evaluation were held discoverable. *Id.*

*Barrett* is similar to *Kamper*. The *Barrett* court held that the privilege did not apply where a police officer was ordered to seek treatment and "more importantly" knew that the psychiatrist would report back to the police department with regard to the examination. 182 F.R.D. at 181. The court noted that the crucial element of any evidentiary privilege is the "intent to keep a communication confidential." *Id.* at 180. Because the officer knew that a status report and recommendations would be made to his employer, the court determined there was no reasonable expectation of privacy. *Id.* at 179.

In *Scott*, the court found that no privilege existed in a police officer's post-shooting psychological evaluation. 101 F. Supp. 2d at 1020. Prior to the onset of his post-shooting evaluation, the officer was informed that the interviews with him and the testing results would be reviewed by the police chief, and that the psychologist's written report and oral testimony might be subpoenaed in a civil litigation lawsuit. The psychologist reported that the officer demonstrated his understanding of that latter fact at various times during his interview by refraining from making certain statements with the explanation that the interview was not confidential. Furthermore, the resulting evaluation actually was disclosed to the police chief and other third parties. *Id.* The court found that there was no reasonable expectation of privacy so the privilege never existed. *Id.* The court alternatively held that if the privilege did exist, the disclosures to third parties waived it. *Id.* at 1020–21.

The officer in *Phelps* was required to meet with a psychologist retained by his employer. 194 F.R.D. at 608. The plaintiff only sought to discover the information that the therapist learned during the evaluations *and* that the therapist subsequently disclosed to the officer's employer. The court refused to apply the privilege to this information because matters disclosed to third parties (the officer's employer) are not confidential. *Id.*

Plaintiffs urge that these cases suggest mandatory post-incident evaluations are *per se* confidential. The Court is not persuaded. These and other courts' rulings suggest that the psychotherapist-patient privilege will apply to mandatory post-shooting therapists' evaluations *if* the patient held a reasonable expectation of privacy before starting the therapy or evaluation sessions. *See Speaker*, 82 F. Supp. 2d at 1116–17 (holding that the fact that the session is mandatory does not destroy the privilege); *Caver v. City of Trenton*, 192 F.R.D. 154, 162 (D.N.J. 2000) (holding that the privilege applied to mandatory post-shooting evaluation where no confidential information was disclosed by psychologist to police chief, but rather only a "yes" or "no" as to whether the officer was fit to return to duty); *Williams v. District of Columbia*, 1997 WL 224921, at *2 (D.D.C. Apr.25, 1997) (privilege upheld for officer who was required to undergo a psychological evaluation after killing suspect where psychotherapist merely opined whether the officer was fit for duty); *Kamper*, 182 F.R.D. at 599; *Barrett*, 182 F.R.D. at 179; *Scott*; 101 F. Supp. 2d at 1020. The determinative factor assessing the existence of a psychotherapist-patient privilege is whether an officer had a reasonable expectation of confidentiality relating to the post-incident counseling session or

evaluation. *See, e.g., Kamper*, 182 F.R.D. at 599; *Barrett*, 182 F.R.D. at 179; *Scott*; 101 F. Supp. 2d at 1020; *Speaker*; 82 F. Supp. 2d at 1117; *Caver*; 192 F.R.D. at 162.

The HCSD-required Authorization form Wilkinson executed at his supervisor's direction merely authorized Dickie to release to Captain Wrobleski "all records pertaining to the referral and attendance." The Court finds, despite the potential ambiguity of this phrase, that this form as presented to and executed by Wilkinson, merely authorized the disclosure of the fact of the referral and the fact of Wilkinson's attendance.[21] Wilkinson also signed a comparable authorization at Dickie's request. The Court credits Wilkinson's testimony at the hearing that he did not expect or authorize Dickie to disclose to the HCSD anything other than the fact of the referral of him to counseling and his attendance record. Also persuasive is Dickie's testimony that he informed Wilkinson prior to their sessions that the communications in the course of the counseling would remain private. This interpretation of the scope of disclosure permitted by the authorization forms is consistent with how the parties—at the time the forms were executed and now—interpret the procedure. Dickie submitted no counseling notes or other records relating to the details of the Wilkinson counseling sessions, and states he never does so on any of his patients sent to him in situations like Wilkinson's.

These circumstances are distinguishable from the cases cited by Plaintiffs. In those cases, the officers knew that reports and assessments from post-incident evaluation sessions

---

[21] There is no dispute that Dickie was authorized to disclose his opinion about Wilkinson's fitness to return to duty, which Dickie stated in the May 27 letter. *See* Hearing Exhibit 4.

would be submitted to their employers. In each case, apparently detailed reports about the sessions were disclosed by the counselor to the employer. In contrast, Dickie did no such thing. The facts of this case are akin to the circumstances in cases in which the psychotherapist-patient privilege has been upheld. *See, e.g., Caver*, 192 F.R.D. at 162; *Williams*, 1997 WL 224921, at *2. The evidence before the Court establishes that Wilkinson intended the counseling sessions with Dickie to be confidential and there is no evidence that Wilkinson intended to waive his psychotherapist-patient privilege.

In reaching these conclusions, the Court also has considered Plaintiffs' arguments that release language in Wilkinson's two pre-employment authorizations are evidence of his intent to waive any privilege he might have in medical and psychological records.[22] The Court is entirely unpersuaded by these contentions. There is no language in either of these releases that suggests that Wilkinson intended to grant access to confidential documents that did not yet exist. These documents are immaterial.

### III.     CONCLUSION AND ORDER

For the foregoing reasons, the Court concludes that Wilkinson had a reasonable expectation of privacy with respect to the substance of his counseling sessions with Dickie, that the matters discussed in these sessions are covered by a psychotherapist-patient

---

[22] Authorization for Release of Personal Information signed August 12, 2000, Hearing Exhibit 2 (signed in connection with Wilkinson's application for permanent employment with the HCSD; Release and Indemnity signed Mar. 21, 1997, Hearing Exhibit 6 (relating to an employment application Wilkinson made to another law enforcement agency).

privilege, and that Wilkinson did not waive this privilege. The Subpoena served on James W. Dickie, Jr., will be quashed. It is therefore

**ORDERED** that Defendant William Wilkinson's Motion to Quash [Doc. # 132] and the Supplemental Emergency Motion to Quash [Doc. # 133] are **GRANTED.**

**SIGNED** at Houston, Texas, this **2nd** day of **March 2006.**

*Nancy F. Atlas*
United States District Judge