## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JULIAN JAMES, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-3576 |
| | § | |
| HARRIS COUNTY, *et al.*, | § | |
|     Defendants. | § | |

### MEMORANDUM AND ORDER

This is a civil rights case brought by Plaintiffs against Defendant Harris County, Texas ("Harris County"). Pending before the Court are Harris County's Motion for Summary Judgment [Doc. #263] ("Harris County's Motion") and Plaintiffs' Motion for Partial Summary Judgment [Doc. # 268] ("Plaintiffs' Motion").[1] Having considered the parties' submissions, all matters of record, and applicable legal authorities, the Court concludes Harris County's Motion should be **granted in part and denied in part** and Plaintiffs' Motion should be **denied**.

## I.   BACKGROUND

The Court briefly summarizes the factual background of this case. Other facts will be supplied as necessary to the legal analysis of the parties' contentions.

---

[1]   The parties also have submitted the following: Plaintiffs' Response to Harris County's Motion [Doc. # 289] ("Plaintiffs' Response"); Plaintiffs' Supplemental Response to Harris County's Motion [Doc. # 295] ("Plaintiffs' Supplemental Response"); Harris County's Response to Plaintiffs' Motion [Doc. # 281] ("Harris County's Response"); Harris County's Reply to Plaintiffs' Response [Doc. #298] ("Harris County's Reply"); and Harris County's Objections to Plaintiffs' Response [Doc. # 299] ("Harris County's Objections").

In May 2004, William Wilkinson ("Wilkinson") was working as a Deputy Sheriff for the Harris County Sheriff's Department ("HCSD").[2]  On May 16, 2004 at approximately 1:20 a.m, Deputy Wilkinson stopped a vehicle driven by Hiji Harrison ("Harrison").  The sequence of events is hotly contested, but the parties agree that Wilkinson shot and killed Harrison.  Plaintiffs, Harrison's mother, wife, and minor child, brought this lawsuit against Wilkinson and the HCSD pursuant to 42 U.S.C. §§ 1982, 1983, 1988, alleging violations of Harrison's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.[3]

## II.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[2]     Plaintiffs originally sued the HCSD.  By Order dated March 8, 2006, the Court substituted "Harris County" for the HCSD as Defendant in this case.  *See* Order [Doc. # 178], at 3.

[3]     Plaintiffs also hinted that they were pursuing unspecified Texas state law wrongful death claims.  The Court earlier dismissed those claims "because they were either futile or not adequately pleaded."  *See* Memorandum and Order, signed March 2, 2006 [Doc. # 175], at 2 n.3.

any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence (quoting *Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994))). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in

search of evidence to support a party's opposition to summary judgment." *See id.* (internal

citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495,

501 (5th Cir. 2005) ("'Judges are not like pigs, hunting for truffles buried in briefs.'"

(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

## III.   SECTION 1983 CLAIMS

### A.   Section 1983 Generally

Broadly speaking, Plaintiffs allege that Harrison's constitutional rights were violated

when he was shot and killed by Wilkinson during the course of an arrest.  Plaintiffs sue

under § 1983 and allege certain policies and customs of Harris County were a moving force

in the violation of Harrison's Fourth, Fifth, Eighth, and Fourteenth Amendment rights

The Civil Rights Act of 1866, 42 U.S.C. § 1983, creates a private right of action for

redressing the violation of federal law by those acting under color of state law.  *Inyo County*

*v. Paiute-Shoshone Indians of the Bishop Cmty.*, 538 U.S. 701, 708 (2003); *Conn v. Gabbert*,

526 U.S. 286, 290 (1999).  Section 1983 provides that "[e]very person who, under color of

any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to

be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party

injured."  42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but

merely provides a method for vindicating federal rights conferred elsewhere."  *Albright v.*

*Oliver*, 510 U.S. 266, 271 (1994).  Thus to establish liability under § 1983 there must be

"(1) a deprivation of a right secured by federal law (2) that occurred under color of state law,

and (3) was caused by a state actor." *Victoria W. v. Larpenter,* 369 F.3d 475, 482 (5th Cir. 2004).

A plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994) (citing *Helling v. McKinney*, 509 U.S. 25 (1993)). The negligent deprivation of life, liberty, or property is not a constitutional violation. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992).

**B.    Constitutional Violations Alleged**

Plaintiffs allege that Wilkinson's conduct violated Harrison's rights in the following ways:

1.    Failing to Discipline/Supervise Wilkinson Based on Unscientific Methods[4];

2.    Using Criminal Law Standards for Assessing Shootings Involving Officers;

3.    Training Officers to Use Improper Criminal Law Standards When Deciding to Use Deadly Force;

4.    Using Improper Criminal Homicide Investigative Standards to Evaluate Officer-Involved Shootings for Constitutional Purposes;

5.    Improperly Returning Officers to Active Duty after Shootings Without a Determination of Whether a Prior Use of Force by the Officer Was Justified;

---

[4]    To avoid mischaracterizing the claims, the Court has adopted Plaintiffs' phrasing where the claim is unclear.

6.      Failing to Train in Defensive and Tactical Procedures;

7.      Failing to Train Wilkinson Regarding Proper Handcuffing Techniques and Force Alternatives;

8.      Failing to Supervise and Review Excessive Force Complaints Against Officers;

9.      Having No Independent and Autonomous Body to Review Officer-Involved Shootings or Having a or [sic] Unreasonable Review Process; and

10.     Ratifying Wilkinson's Misconduct.[5]

Harris County first denies that Wilkinson violated any of Harrison's constitutional rights.  Harris County also argues that, even if Plaintiffs demonstrate a constitutional violation, Plaintiffs' claims against Harris County fail as a matter of law because Plaintiffs cannot demonstrate that Harris County maintained an official policy or custom that was a moving force behind any such constitutional violation.

**Viable Legal Theories.**— Plaintiffs claim that Wilkinson used excessive force against Harrison in violation of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments.  The Supreme Court has emphasized "all claims that law enforcement officials have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard rather than a substantive due process approach."  *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998).  "Because the Fourth Amendment provides an explicit textual source of

---

[5]      Plaintiffs' Third Amended Complaint, ¶ 3.6, at 4–5.

constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,'" as invoked by Plaintiffs in their Fifth and Fourteenth Amendment claims, must be the guide for analysis. *See Graham*, 490 U.S. at 395. "While it is not always clear just when minimal police interference becomes a seizure, there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (citation omitted). Thus, a complaint of deadly force under § 1983 brought by a person who is not incarcerated must be analyzed under Fourth Amendment standards. *See Stroik v. Ponseti*, 35 F.3d 155, 157 (5th Cir. 1994); *Reese v. Anderson*, 926 F.2d 494, 500 (5th Cir. 1991).

Plaintiffs also assert an Eighth Amendment claim. Harris County does not incur Eighth Amendment liability even where injury occurs as the result of official conduct, unless the individual was being held in custody after a criminal conviction. *See Graham*, 490 U.S. at 393 (In excessive force suit brought under 42 U.S.C. § 1983, "the less protective Eighth Amendment standard applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions."); *Lynch v. Cannatella*, 810 F.2d 1363, 1376 (5th Cir. 1987) ("[T]he eighth amendment prohibition against cruel or unusual punishment is not applicable to [§ 1983] cases in which the plaintiffs were not in custody as a result of having been convicted of a crime"). It is undisputed that when he was shot and killed by Wilkinson, Harrison was not being held in post-conviction custody.

Consequently, Plaintiffs' Eighth Amendment claim fails as a matter of law.  *See Graham*, 490 U.S. at 393 n.6; *Lynch*, 810 F.2d at 1376.

Plaintiffs also claim in passing that Wilkinson's initial arrest of Harrison was unconstitutional.[6]  That claim fails as a matter of law because Plaintiffs do not allege or present evidence to show any Harris County policy, custom, or practice caused the alleged unconstitutional arrest.  *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978).

Finally, Plaintiffs' counsel made it clear at a September 11, 2006 hearing that Plaintiffs had abandoned their potential failure to train theories.

Accordingly, Plaintiffs' only potentially viable constitutional claim against Harris County is that Wilkinson used excessive force against Harrison on May 16, 2004.  That claim will be analyzed under the Fourth Amendment.

## C.    Constitutional Injury

To prevail on a claim for the use of excessive force under the Fourth Amendment, a § 1983 plaintiff is required to prove:  (1) an injury, (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of the use of force was objectively unreasonable.  *United States v. Sipe*, 388 F.3d 471, 480 n.22 (5th Cir. 2004) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 487 (5th Cir. 2001)); *see Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998).  "Deadly force is a subset of excessive force" and "violates the Fourth Amendment unless the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer

---

[6]    Plaintiffs' Third Amended Complaint, ¶ 3.1.

or to others." *Bazan*, 246 F.3d at 487–88 (internal citations omitted).  Use of deadly force is authorized if the officer is firing to prevent his own death or serious bodily injury.  *Fraire*, 957 F.2d at 1276–77.

The parties present evidence to support two materially different scenarios leading to Harrison's deadly injuries.

***Wilkinson's Account.***— Wilkinson testifies that he requested permission to search Harrison's vehicle after stopping him for speeding, that Harrison consented to the search, and that Wilkinson checked Harrison for weapons, but found none.  Wilkinson states that he placed Harrison in the rear of his patrol car without any restraints while he, Wilkinson, conducted the search of Harrison's car.  Wilkinson thereafter found a handgun on the floorboard on the front passenger side of Harrison's vehicle.  Wilkinson states that he then returned to his patrol car, opened the driver side rear door, asked Harrison to turn around while remaining seated, and attempted to handcuff Harrison. Wilkinson states he placed one handcuff on Harrison's left wrist before Harrison initiated a violent struggle.  Wilkinson then recounts, generally, that Harrison at first only resisted being handcuffed and attempted to push Wilkinson out of the car by pushing backwards, that Wilkinson ordered Harrison to stop resisting, that Harrison then grabbed Wilkinson's left arm, which became pinned under Harrison's body, and that Harrison repeatedly attempted to grab Wilkinson's pistol. Wilkinson states further that Harrison ultimately unfastened the "roll top" that secured Wilkinson's pistol, and that he thought Harrison was attempting to disarm him rather than merely escape.  Wilkinson stated he feared that he might have lost control of his pistol, so

he reached for the pistol with his free right hand and immediately discharged at least one round.  Harrison only loosened his grip on Wilkinson's left hand/arm after Wilkinson fired, but Wilkinson was unsure whether the bullet struck Harrison.  Wilkinson, in control of his weapon, noticed Harrison moving towards him across the back seat.  Wilkinson claims he was exhausted and feared that Harrison would gain control of his pistol if Harrison exited the car.  Wilkinson fired his weapon towards the advancing Harrison until his pistol jammed.  After he cleared the jam, Wilkinson did not fire anymore rounds because Harrison was no longer moving.  On the basis of this series of events, Harris County contends that there was clearly justification for Wilkinson to have used deadly force on Harrison.

*Plaintiffs' Evidence.*— Plaintiffs offer scientific evidence from the scene to controvert Wilkinson's account of the shooting in material ways and, thus, to support their theory that Wilkinson violated Harrison's right to be free from unreasonable excessive force.  Plaintiffs note the absence of trauma to Harrison's left wrist near the area where Wilkinson states he handcuffed Harrison before the struggle.  Plaintiffs point out that an inspection of Wilkinson after the shooting and Harrison's autopsy reveals no bruises, contusions, injuries, or evidence consistent with the struggle Wilkinson described.  Plaintiffs also note the lack of scratches or marks on Wilkinson or Harrison even though Wilkinson was wearing a metal-banded watch on the left arm he claims was pinned under Harrison's body.  Plaintiffs contend that the post-DNA analysis—which revealed no evidence of Harrison's DNA on Wilkinson's pistol, holster, or service belt—contradicts Wilkinson's assertion that Harrison reached for his pistol at least two times.

Plaintiffs next present forensic evidence inconsistent with Wilkinson's claim that he shot Harrison in the back seat of the patrol car, specifically, the lack of blood in the area of the patrol car where Wilkinson claims the shooting occurred, the lack of gunpowder residue in the area Wilkinson supposedly fired the first shot, the presence of gunpowder residue in multiple places near the car door, and the trajectory of spent shell casings that is inconsistent with Wilkinson's version of the events. Plaintiffs rely on uncontroverted evidence of blood splatters found on the car door casing and the absence of blood splatters on the handcuff that allegedly was on Harrison's wrist when he was shot to suggest the handcuff was placed on Harrison after he was shot. Further, none of Harrison's DNA was found on the external or internal surfaces of the pistol Wilkinson purportedly found in Harrison's vehicle. Plaintiffs present an expert who states that Harrison's autopsy revealed bullet "pathways" entirely inconsistent with Wilkinson's account of the shooting.

It is undisputed that Wilkinson used deadly force and that Harrison died as a result of the gunshot wounds he inflicted. A key disputed issue in this case is whether Wilkinson's use of force was clearly excessive and objectively unreasonable. *See Sipe*, 388 F.3d at 480 n.22. The Fifth Circuit has noted an "award of summary judgment to the defense in deadly force cases may be made only with *particular care where the officer defendant is the only witness left alive to testify*." *Bazan*, 246 F.3d at 492 (emphasis in original). In such cases, "a court must undertake a fairly critical assessment of the forensic evidence, the officer's original reports or statements and the opinions of experts to decide whether the officer's testimony could reasonably be rejected at a trial." *Id.*

In the present case, Wilkinson's account, if true, would permit the fact-finder to conclude Wilkinson was justified in using deadly force to defend himself from Harrison's attack.  However, if the evidence were viewed in the light most favorable to Plaintiffs, the trier of fact could disbelieve Wilkinson's account and, on the basis of forensic evidence, credit Plaintiffs' explanation of the events to conclude that Wilkinson unreasonably used force clearly excessive to the need in shooting Harrison.  *See Sipe*, 388 F.3d at 480 n.22.  Plaintiffs have therefore raised a genuine material fact issue that precludes summary judgment that Harrison did not suffer a constitutional injury.

D.    **Section 1983 and Municipal Liability**

1.    **Legal Standards**

Harris County is the only remaining defendant in this lawsuit.  It is well-established that a municipality such as Harris County "can be held liable for its policies and customs that engender constitutional deprivation, but that it cannot be held liable for the actions of its non-policymaking employees under a theory of *respondeat superior*."  *Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir. 2003).  "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker[7]; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell*, 436 U.S. at 694); *see Cox v. City of Dallas, Tex.*, 450 F.3d 734, 748

---

[7]    "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998)).

(5th Cir. 2005).[8]  Stated differently, there must be both municipal culpability and causation.

*See Snyder v. Trepagnie*r, 142 F.3d 791, 796 (5th Cir. 1998).  "Culpability includes both the

involvement of a municipal policymaker and affirmative municipal action."  *Piotrowski*, 237

F.3d at 578 n.17.

> Fifth Circuit precedent defines official policy, for purposes of § 1983 liability, as:
>
> 1.   A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.   A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003) (quoting *Bennett v. City of*

*Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*)); *see also Evans v. City of Houston*, 246

F.3d 344, 358 (5th Cir. 2001).

"If actions of city employees are to be used to prove a custom for which the

municipality is liable, those actions must have occurred for so long or so frequently that the

course of conduct warrants the attribution to the governing body of knowledge that the

objectionable conduct is the expected, accepted practice of city employees."  *Webster v. City*

---

[8]     "These requirements must not be diluted for '[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability.'"  *Snyder*, 142 F.3d at 796 (quoting *Bd. of Comm'rs of Bryan Co. v. Brown*, 520 U.S. 397, 415 (1997)).

*of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).  Consistent with the commonly understood meaning of "custom," proof of random acts or isolated incidents is not sufficient to show the existence of a custom or policy.  *See Fraire*, 957 F.2d at 1278.  "'Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability."  *Campbell*, 43 F.3d at 977.  Only if the plaintiff shows that his injury resulted from a "permanent and well settled" practice may liability attach for injury resulting from a local government custom.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

Moreover, a city does not incur liability under § 1983 unless there exists "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Specifically, "the plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997).  "This connection must be more than a mere 'but for' coupling between cause and effect."  *Fraire*, 957 F.2d at 1281 (citing *City of Canton*, 489 U.S. at 386).

In addition, the "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Brown*, 520 U.S. at 411.  As the Supreme Court explained:

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a

direct causal link between the municipal action and the deprivation of federal rights.

*Brown*, 520 U.S. at 404.

"Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Brown*, 520 U.S. at 415. Thus, plaintiffs seeking to recover against a municipality under § 1983 must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the city consciously enacted a policy reflecting deliberate indifference to the constitutional rights of its citizens. *City of Canton*, 489 U.S. at 389. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.

### 2.    Plaintiffs' Motion: Effect of Harris County's Rule 36 Admissions

Harris County admitted in response to Plaintiffs' Federal Rule of Civil Procedure 36 Requests for Admissions that Wilkinson's conduct on the night of the shooting complied with Harris County's policies and practices.[9] Based on these County admissions, Plaintiffs

---

[9]    Harris County admitted the following:

1.    Wilkinson complied with the HCSD's policies in the use of deadly force on the night in question;

2.    Wilkinson's shooting of Harrison was in conformity with the policies and practices approved by the HCSD; and

3.    Wilkinson complied with HCSD's policies at the time Wilkinson subdued and
(continued...)

seek partial summary judgment in their favor on the issue of Harris County having an unconstitutional policy or custom on the use of excessive force.  Plaintiffs contend that these Harris County admissions establish as a matter of law that Wilkinson's conduct, however excessive or otherwise unconstitutional, conformed to approved Harris County policies or practices.

Harris County disagrees.  Harris County maintains that its investigation and finding that the shooting was justified were sound.  The County argues that, if the investigation is shown to be faulty, it only "mistakenly believed that Wilkinson complied with otherwise constitutionally sound policies."[10]

_____

[9]      (...continued)
                              shot Harrison.

See Exhibit C to Plaintiffs' Motion, Harris County's Responses to Requests for Admissions 26, 27; Exhibit D to Plaintiffs' Motion, Harris County's Responses to Second Request for Admission 5; Exhibit E to Plaintiffs' Motion, Harris County's Response to Fourth Request for Admission 31.  Plaintiffs also rely on Harris County's admissions that Wilkinson's conduct on the night in question conformed with Harris County's training. However, these admissions are now immaterial because Plaintiffs have abandoned their failure to train theories.

Wilkinson, while a defendant in this lawsuit, also "admitted" in response to Plaintiffs' discovery requests under Federal Rule of Civil Proc. 36 that his shooting of Harrison conformed with policy and practices approved by the HCSD.  It is unclear whether Wilkinson's admission binds Harris County under the particular circumstances of this case. The then live pleading named Wilkinson and the HCSD as separate defendants. See Plaintiffs' Original Complaint, ¶¶ 6–7.  In that pleading, however, Plaintiffs did not specify whether they were suing Wilkinson individually or in his official capacity.  See id.  Wilkinson was represented by Harris County's lawyer and the defendants asserted a joint defense.  This procedural issue is complex and the parties did not meaningfully brief their arguments.  The Court concludes there is no need to resolve this issue because Harris County admitted the same facts in its own responses to Plaintiffs' Requests for Admissions.

[10]     Harris County's Reply, at 12.

Any matter admitted under Federal Rule 36 is deemed conclusively established unless a court permits withdrawal of the admission. FED. R. CIV. P. 36(b). Rule 36 admissions are competent summary judgment evidence. *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). Furthermore, since "Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record." *Id.* at 420. A Rule 36 admission is treated as a judicial admission. *See Matter of Corland Corp.*, 967 F.2d 1069, 1074 (5th Cir. 1992).

However, only "'deliberate, clear and unequivocal' statements can constitute conclusive judicial admissions." *Matter of Corland*, 967 F.2d at 1074 (quoting *Backar v. Western States Producing Co.*, 547 F.2d 876, 880 n.4 (5th Cir. 1977)). Moreover, the Fifth Circuit teaches that, where an answering party's responses to two different requests for admissions are contradictory, the admission relied on by the requesting party will not bind the answering party. *See id.*

In this case, Plaintiffs are not entitled to summary judgment on the policy or custom element of their § 1983 claim based on Harris County's Rule 36 admissions. Certain of Plaintiffs' requests for admissions are vague and Harris County's responses to the requests, when read in their entirety, are contradictory. On one hand, as Plaintiffs note, Harris County admits generally that Wilkinson's subduing and shooting Harrison conformed to HCSD's policies and procedures. Thus, Plaintiffs argue, if the trier of fact found that Wilkinson used excessive force in shooting Harrison, then Harris County would be bound by its admissions

and could not escape liability by proving Wilkinson did not comply with its policies and practices on the night in question.  This argument, however, ignores the ambiguity of and inconsistencies among Harris County's admissions, and thus flies in the face of the Fifth Circuit's teaching that courts must consider all of a party's responses to requests for admissions.  *See Matter of Corland*, 967 F.2d at 1074.  First, the admissions in issue (*e.g.*, that Wilkinson's shooting of Harrison was in conformity with the policies and practices approved by the HCSD) are vague and in that they do not define what policies or customs Harris County admits Wilkinson adhered to.  Second, even if Harris County's admissions that Wilkinson complied with the HCSD's policies in the use of deadly force are construed as Plaintiffs contend, these admissions are inconsistent with other admissions by the County. For instance, Harris County "admits" Harrison initiated the struggle and attempted to take Wilkinson's weapon.[11]  The County "admits" it contends Wilkinson was justified in using deadly force in shooting Harrison.[12]  Reading all the admissions together, Harris County merely acknowledges that the shooting was justified *because* Harrison attacked Wilkinson and that a justified shooting conformed to its policies in practices.  When read as a group, Harris County's admissions do not suggest that the County acknowledges that Wilkinson's (or any officer's) unjustified use of excessive force would comply with County policies and customs.  The Court therefore concludes that Harris County's Rule 36 admissions are not

---

[11]     *See* Exhibit C to Plaintiffs' Motion, Harris County's Response to Request for Admissions 16, 19.

[12]     *See* Exhibit C to Plaintiffs' Motion, Harris County's Response to Request for Admissions 27.

conclusive judicial admissions binding on Harris County. *See Matter of Corland*, 967 F.2d at 1074. As Plaintiffs' Motion for Partial Summary Judgment on the issue of policy or custom relies entirely upon Harris County's admissions, that Motion is denied.[13]

### 3.    Policy and Custom

Harris County seeks judgment as a matter of law on Plaintiffs' § 1983 claim on the ground that there is no evidence that the County maintained an official policy, practice or custom[14] that was the moving force behind the alleged violation of Harrison's constitutional rights. Plaintiffs contend Harris County's admissions create a fact issue on whether an official policy or custom of Harris County was a moving force in the alleged violation of Harrison's constitutional rights. Plaintiffs alternatively argue, in the event Harris County's admissions are insufficient to preclude summary judgment, that Harris County's review process for officer-involved shootings employed arbitrary and capricious standards to judge the constitutional limits of an officer's use of deadly force. Plaintiffs also urge that, during Wilkinson's tenure, Harris County's regular practice was to under-investigate officer-involved shootings and to repeatedly exonerate the accused officers in those investigations. Plaintiffs contend that the HCSD officers were aware the practices and that the County thus had a custom that permitted the use of clearly excessive force.

---

[13]    Plaintiffs also contend Harris County's admissions constitute ratification evidence. A municipality may also face liability for ratifying illegal acts. *See Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir. 1985). The Court rejects Plaintiffs' ratification argument for the same reasons the Court concludes the admissions are not binding against the County.

[14]    The Court uses the terms "practice" and "custom" interchangeably.

For the reasons explained below, the Court concludes there are genuine issues of material fact on whether Harris County maintained an official policy or custom that was a moving force behind the alleged constitutional injury in this case.

***Harris County's Admissions.***— Plaintiffs contend Harris County's Rule 36 admissions create a fact issue on whether an official policy or custom of Harris County was a moving force in the alleged violation of Harrison's constitutional rights. Harris County has admitted *inter alia* that Wilkinson, in subduing and shooting Harrison, complied with its approved policies and practices. As noted above, however, Harris County's admissions taken as a whole are vague and inconclusive. They do not raise a genuine fact issue on the existence of a policy or custom that was a moving force in the alleged constitutional violation claimed.

***Specific Policies and Practices.***— Harris County details its written use of force policies and practices in an effort to establish that there is no genuine issue of fact on the existence of a HCSD policy or custom that permits use of excessive force, or condones the use by officers of such force. For instance, HCSD deputies are required to successfully complete a state-licensed training academy and have prior law enforcement experience. The academy trains applicants in making arrests and the proper use force. The academy requires classroom and practical training in tactical and defensive procedures. Deputy applicants must pass a psychological and background investigation. Successful applicants are then hired as deputies and assigned to the Harris County jail as guards.

A deputy who wants to become a patrol deputy must pass a written test, a physical agility test, and a firearm proficiency test.  Deputies who pass all three tests are then placed on a list for patrol deputy training in order of seniority.  Once selected, the deputy spends four weeks in the classroom training with a training officer.  The classroom training includes "shoot, don't shoot" training.  Both the academy and patrol deputy training include instruction on proper handcuffing procedures.  Deputies who successfully complete classroom training must ride in a patrol car with a training officer for two months.  In June 2001, Wilkinson successfully completed this process and began working as a patrol deputy with the HCSD.

All deputies are given written copies of and expected to know Harris County's policies on *inter alia* use of force, discipline, supervision, rules of conduct, and arrest procedures.  The policies mandate that Harris County deputies are permitted only to use the reasonable and necessary amount of force to effect an arrest and deter any aggression or resistance, and a deputy may only use such force that is authorized by law.  According to Harris County's written use of force policy:

> A Deputy is justified in using deadly force against another when and to the degree the Deputy reasonably believes the action is in defense of human life, including the Deputy's own life, or in defense of another person in imminent danger of serious physical injury.[15]

Wilkinson states that he was at all times familiar with Harris County's policy and was aware that violation of this policy would subject him to discipline up to termination and

---

[15]     Harris County's Use of Force Policy, Exhibit E to Harris County's Motion, at 3.

referral for criminal prosecution if criminal conduct was involved.[16]  Two HCSD sergeants were typically on patrol to monitor patrolling deputies and dropping by arrest scenes to offer assistance.  Wilkinson states he would be subject to discipline if the sergeants observed any improper conduct.[17]

Plaintiffs do not appear to challenge the constitutionality of these formal policies or practices.  Plaintiffs instead argue that Harris County has informal practices or customs that are unconstitutional and that were a moving force in Harrison's injuries.  First, Plaintiffs maintain Harris County's review process for officer-involved shootings uses arbitrary and capricious standards to judge the constitutional limits of an officer's use of deadly force. Specifically, Harris County has an Administrative Review Board ("Board") that reviews officer-involved shootings and administers any resulting discipline.  HCSD's Internal Affairs Department ("IAD") collects and summarizes data from each shooting investigation and presents it to the Board.  The Board is composed of several HCSD Majors who hold senior positions and answer to the Deputy Chief and the Sheriff.  The Sheriff appoints and removes Board members at his discretion.  At the time of the Harrison shooting, the Board's decisions regarding officer-involved shootings were the final decisions on whether discipline would be imposed by the HCSD.

Plaintiffs focus on testimony of Harris County representative Michael Smith, who states that Board members used their own individual criteria and judgment to determine

---

[16]     Wilkinson's Affidavit, Exhibit B to Harris County's Motion, at 2–3.

[17]     *Id.*, at 4.

whether a particular shooting was justified.  Further, Board members were given discretion in their review concerning what standard of proof to utilize and which party had the burden to prove the shooting was justified or not.  Significantly, it is clear that different Board members used different standards to decide whether a shooting was justified, with different members citing they used "probable cause," "preponderance of the evidence," "clear and convincing," and "beyond a reasonable doubt."  Plaintiffs argue that, in practice, these loose procedures in the aggregate constitute a HCSD practice or custom that allowed deputies to use deadly force so long as such use could not be proven beyond a reasonable doubt to be excessive to the need.

Plaintiffs also contend that Harris County had a practice or custom to inadequately investigate officer-involved shootings during Wilkinson's tenure and a pattern of exonerating the officers.  As proof, Plaintiffs cite the testimony of Dr. Joye Carter, former Chief Medical Examiner of Harris County.[18]  Dr. Carter served in that position from July 1996 until October 2002.  During that time period, Dr. Carter worked with the HCSD in the investigation of shooting deaths.  Dr. Carter was responsible for investigating as many as twenty-five officer-involved shootings while working for Harris County.  It appears at least nine of these shootings occurred while Wilkinson worked as a patrol deputy for the HCSD.  According to Dr. Carter, the HCSD handled officer-involved shootings differently from other homicide

---

[18]     Harris County objected to testimony and opinions offered by Dr. Carter.  At a pretrial hearing on September 11, 2006, the Court ruled Dr. Carter could testify regarding her personal knowledge of the officer-involved shootings she investigated while employed as the Harris County Medical Examiner, as well as her analysis of the HCSD files she has closely reviewed.

investigations.  Dr. Carter states that, in her experience with shootings by Harris County deputies, the HCSD evinced a bias in blaming the victim and would often ignore evidence that incriminated deputies.  Dr. Carter testified that the HCSD's practice of ignoring evidence that incriminated officers involved in shootings was uniform, pervasive, and widespread.  This evidence collectively is sufficient to raise a genuine question of material fact that HCSD had a practice or custom of not punishing officers that used force excessive to the need.

Plaintiffs also offer expert testimony from Dr. David Klinger, a former police officer who has a Ph.D in Sociology and a Masters degree in Criminal Justice.  According to Klinger, the informal culture of police organizations is such that when there are clear cut inadequacies and procedures in departmental review of serious officer-involved incidents, the rank and file members of the organization generally are aware of the deficiencies.[19] Klinger also states that this knowledge affects officers' decisions on whether to use force that is likely to be excessive to the need, and implicitly encourages such conduct.  This evidence combined with the foregoing information about IAD officer-shooting investigations present genuine issues of material fact as to whether Wilkinson was aware of Harris County's alleged policies or customs of under-investigating officer-involved shootings and applying a lenient standard of review to the incidents, and whether this knowledge was a moving force in Wilkinson's actions with respect to Harrison.  *See Piotrowski*, 237 F.3d at 578.

---

[19]     Harris County objected to this opinion by Klinger.  The Court overruled this objection in substance at a pretrial hearing on September 11, 2006.  This ruling did not address other opinions by Klinger.  The Court reserves the right to exclude opinions by this or other witnesses that are found to be inadmissible.

Harris County's request for summary judgment dismissing Plaintiffs' § 1983 excessive force claim is denied.

## V.   EQUAL PROTECTION CLAIM

Plaintiffs superficially assert an equal protection claim by alleging Harrison's race (African-American) contributed to the deprivation of his rights.  The Equal Protection clause directs that "all persons similarly circumstanced shall be treated alike."  *Plyler v. Doe*, 457 U.S. 202, 216 (1982); *Piotrowski*, 237 F.3d at 578 n.15.  Harris County argues Plaintiffs have no evidence of any unconstitutional policy or practice relevant to the alleged denial of equal protection.  *Piotrowski*, 237 F.3d at 578 & n.15.  Plaintiffs did not respond to this argument in their Response or Supplemental Response.  Furthermore, Plaintiffs' counsel stipulated at a pretrial hearing held on September 11, 2006, that Plaintiffs were asserting only an excessive force theory.  Plaintiffs' equal protection claim therefore is deemed abandoned and will be dismissed.

## VI.   CONCLUSION

Plaintiffs' only potentially viable claim against Harris County is a § 1983 excessive force claim that must be analyzed under the Fourth Amendment. There is a genuine issue of material fact as to whether Deputy Wilkinson violated Harrison's Fourth Amendment right to be free from excessive force.  Further, genuine issues of material fact preclude either party from obtaining summary judgment on the issue of whether Harris County maintained an official policy or custom that was the moving force behind the possible constitutional

violation in this case.   Accordingly, neither party is entitled to summary judgment on Plaintiffs' § 1983 excessive force claim against Harris County.

Plaintiffs' equal protection claim is deemed abandoned and is dismissed.   It is therefore

**ORDERED** that Harris County's Motion for Summary Judgment [Doc. #263] is **GRANTED IN PART AND DENIED IN PART**.   It is further

**ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [Doc. # 268] is **DENIED**.

**SIGNED** at Houston, Texas, this **28th** day of **September, 2006**.

Nancy F. Atlas
United States District Judge